UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALEX LYLE #222501,

    Plaintiff,

v.

WILLIAM WARREN, et al.,

    Defendants.

_____/

Case No. 2:08-cv-29
HON. R. ALLAN EDGAR

**OPINION**

Plaintiff Alex Lyle, an inmate currently confined at the Macomb Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Dr. William Warren, Health Unit Manager Clara Chosa, Carrie Hyrkas, R.N., Betty Kotila, R.N., Anne M. Morin, R.N., Health Supervisor Jeannie Stephenson, and Nurse Supervisor Gloria Hill. On initial review the court dismissed the case as frivolous for failure to state a claim. The Sixth Circuit issued an order vacating the dismissal and remanding the case after concluding that Plaintiff stated an Eighth Amendment claim for denial of medical care.

In his complaint, Plaintiff alleges that from January 31, 2006, until the present time, he has been complaining of a hernia, abdominal pain, bleeding rectum, vomiting twice a week, burning on urination, foul body odor, and various infections. Plaintiff states that he is concerned that his symptoms could be a sign of colon or prostate cancer, a stomach ulcer, or other potentially serious problems. Plaintiff states that the only thing that Defendants have done in responding to his complaints is to cover up their deliberate indifference by lies and deceit. Plaintiff claims that he should have been referred to an outside hospital or doctor, given a CAT scan, and prescribed

appropriate medications. Plaintiff claims that Defendants' delay in providing him with appropriate medical care has exacerbated his medical problems and that this type of problem was exposed on February 11, 2007, by CBS Television in "SIXTY MINUTES about neglect and substandard medical care in the Michigan Department of Corrections." In addition, Plaintiff claims that this issue was also explored by Detroit Free Press Columnist Jeffrey Gerritt. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue

of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that plaintiff failed to completely exhaust his claims before he filed this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). The Sixth Circuit has squarely held that a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The administrative process must be complete before the prisoner files an action in federal court. *Id.*

The grievance policy provides that the total process from the filing of a Step I grievance to the response at Step III "shall generally be completed within 120 calender days." MDOC Policy Directive 03.02.130 ¶ S. Plaintiff filed his grievance asserting inadequate medical care on December 4, 2007. His Step III appeal was filed on January 16, 2008. Instead of waiting for the response to his Step III grievance, plaintiff filed this lawsuit on January 28, 2009. Plaintiff should have waited 120 days for the completion of the grievance process or until his Step III grievance was answered before filing a complaint in this court. Plaintiff admits in his responsive pleading that he completely exhausted his grievance remedies by April 16, 2008. Plaintiff's grievance remedies were not fully exhausted at the time he filed his complaint. Accordingly, plaintiff's Eighth Amendment claims are dismissed without prejudice.

To the extent that Plaintiff is suing the individual defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). An official capacity claim is a claim against the State and claims for damages are barred by Eleventh Amendment immunity. *Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009).

Defendants Hill and Stevenson argue that they were not personally involved in Plaintiff's medical care. Defendant Hill is the AMF Health Unit Manager and defendant Stephenson is the Clinical Administrative Assistant for the MDOC, Region I Heath Care. Defendant Hill reviewed the Step I grievance response prepared by Betty Kotila and defendant Stephenson answered the Step II grievance.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if Plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of Plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a

supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, Plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Hill or Stephenson were personally involved in the activity which forms the basis of his claim. Accordingly, the Court concludes that Plaintiff's claims against Defendants Hill or Stephenson are properly dismissed for lack of personal involvement.

Defendants argue that they are entitled to the defense of qualified immunity, because Plaintiff cannot show a clearly established violation of the Eighth Amendment. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which

a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In

> order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff has received extensive and frequent medical care by Defendants while he has been confined within the MDOC facilities.[1] Plaintiff's medical records show that he has had frequent and re-occurring stomach issues which have been treated with antacids, as well as other over-the-counter medications and prescription medications. Plaintiff was provided with Metamucil, Mylanta and Prilosec throughout this period. Plaintiff also received additional medications and treatments. Plaintiff alleged that he sought medical care on more than ten occasions between January 31, 2006, and the time that he filed his complaint. On January 31, 2006, Plaintiff was examined by nurse Clara J. Chosa. Plaintiff complained of nausea and vomiting with abdominal pain. Plaintiff was to follow-up with a doctor. The next day, Plaintiff arrived to be examined by Dr. Fernando E.

---

[1] Defendants have submitted 622 pages of records from Plaintiff's medical file.

Frontera, MD. Plaintiff refused to be weighed and stated that he was all right. On February 1, 2006, Plaintiff complained of stomach pain. On February 3, 2006, a nurse noted that Plaintiff was now in segregation and would be re-listed for callout. On February 7, 2006, Plaintiff was examined by nurse Johnson who noted that the examination was normal. Plaintiff complained of flank pain and painful urination. Plaintiff gave a urine sample on February 8, 2006, which was analyzed on February 9, 2006, by an offsite laboratory. Plaintiff was examined by Dr. Frontera on February 9, 2006. Plaintiff complained of mild abdominal pain.

Plaintiff requested medical attention on February 20, 2006, for stomach pain. His request was considered routine by medical staff and he was examined cell side by a nurse and placed on the medical call list. Plaintiff was examined on February 22, 2006, by nurse Chosa and instructed to avoid foods that aggravate him and to drink at least 6-8 glasses of water a day. Plaintiff was listed to see a doctor the next day. Dr. Frontera placed Plaintiff on a reflux diet from February 23, 2006 until August 31, 2006, to help resolve Plaintiff's heartburn symptoms. Plaintiff was also given Mylanta. On February 27, 2006, Plaintiff was given a psychological assessment. On March 1, 2006, Dr. Frontera made a Progress Report regarding Plaintiff, and ordered a number of lab tests for March 3, 2006. Plaintiff received a physical examination on that date, and it was noted that Plaintiff had complaints associated with GERD. A consultation request for an abdominal ultrasound was made to rule out liver or gall bladder problems.

On March 16, 2006, Plaintiff complained of pain on his side, burning with urination and bleeding from his rectum. Plaintiff felt that his complaints were urgent, however, nurse Morin considered the complaints routine and scheduled Plaintiff for an appointment on March 20, 2006. Plaintiff was examined by Dr. Frontera. A urine sample was taken. Plaintiff's laboratory results

came back normal, including blood and urinalysis. The ultasound of Plaintiff's upper abdomen taken on March 30, 2006, was unremarkable.

On April 9, 2006, Plaintiff complained of stomach pain, foul body odor, and bleeding from his rectum. Plaintiff requested that his Mylanta be refilled. On April 11, 2006, nurse Hyrkas responding by explaining that plaintiff's Mylanta tablets are refilled automatically every thirty days, and that his ultrasound was normal. Plaintiff was examined by Nurse Williams on April 13, 2006. No orders were written. Plaintiff became loud and irrate and the examination was shortened.

On April 24, 2006, plaintiff requested medical care regarding stomach pain and complained that his skin was darker than usual. Plaintiff complained of blood in his rectum and burning when urinating. At his examination on April 28, 2006, Plaintiff felt that he had an infection. However, that was ruled out by the ultrasound of his abdomen. Nurse Kotila tried to explain this to Plaintiff, but she noted that there was a mis-communication and scheduled Plaintiff to see the doctor. Dr. Frontera examined plaintiff on May 4, 2006. He scheduled Plaintiff for another urinalysis and discontinued Plaintiff's reflux diet. Plaintiff reported that Metamucil improved his constipation and requested that his reflex diet be discontinued. Dr. Frontera noted that all testing so far had resulted in negative findings. Follow-up visits were ordered.

Plaintiff made similar complaints on May 17, 2006. Nurse Kotila scheduled Plaintiff for an assessment the next day and explained to him that all tests came back negative. On May 18, 2006, a nurse examined Plaintiff without any orders written. On May 21, 2006, nurse Kotila examined Plaintiff after he complained that he fell in his cell and hit his eye. On May 23, 2006, Dr. Frontera prescribed Motrin for Plaintiff's eye injury. Plaintiff refused to be seen by Dr. Frontera on May 30, 2006.

Dr. Frontera examined Plaintiff on June 9, 2006. Dr. Frontera noted that Plaintiff has GERD, constipation, hemmoroids and dermatomicosis. Plaintiff continued on a number of medications including Mylanta, Metamucil, Prilosic, medicated pads and skin medications. These medications were the same medications that had been available to plaintiff throughout the course of his treatment.

Plaintiff made similar complaints on July 12, 2006. On July 14, 2006, Plaintiff was scheduled for an examination which occurred on July 17, 2006. No orders were written. On July 25, 2006, Plaintiff was examined with similar complaints. A number of laboratory tests were ordered and a follow-up visit was scheduled. On August 8, 2006, Plaintiff was examined and stated that he needed penicillin to get rid of his infection. Plaintiff complained of body odor, rectal bleeding and that he was coughing-up blood. A chest x-ray was ordered. Plaintiff was given the antibiotic, Cipro. Plaintiff received a psychological assessment on August 18, 2006. On August 21, 2006, Plaintiff requested renewal of some of his medications. On August 23, 2006, nurse Hyrkas noted that Hydrocortisone was filled automatically and Proctosol was ordered.

On August 30, 2006, Plaintiff complained that he had hemorrhoids and an infection. Nurse Kotila asked if this was a new complaint and Plaintiff began to scream obscenities at the nurse during her rounds. Plaintiff was informed to contact health services if his symptoms continued. On September 2, 2006, Plaintiff complained that he was dizzy, was urinating blood and that his stomach hurt. Plaintiff demanded Penicillin because "it helps everything." The examination of Plaintiff was normal. Plaintiff was scheduled for a follow-up examination. Plaintiff again complained of foul body odor on September 11, 2006. Plaintiff was referred to "Psych" on September 14, 2006. His October 3, 2006, psychiatric evaluation noted that his "thoughts contained mildly over valued ideas

relating to his bodily odor." However, plaintiff could describe no notable problems regarding his daily activities due to his bodily odor.

Plaintiff made a complaint on October 4, 2006, for a cream refill which was ordered on October 6, 2006. Plaintiff made a medical complaint on October 23, 2006, claiming that he was bleeding from his penis and rectum and had stomach pain. Plaintiff requested an HIV test, STD test and Hepatitis test. Plaintiff refused his medical call-out on October 27, 2006, because he did not want to go with the officers. Ultimately, plaintiff received these tests which came back negative.

Plaintiff was taken off medications in December 2006, and instructed to purchase over-the-counter medications from the Prison Store. Plaintiff continued to be a frequent health care visitor. Plaintiff remained on Metamucil and received skin medications. Plaintiff's examinations and laboratory tests always came back normal. Plaintiff continued his claims that he has an infection and bad body odor. Neither of these claims have been medically confirmed. Plaintiff concedes that other people cannot smell his body odors. Plaintiff has been assessed to have some "eccentric thoughts and paranoid thinking," but did not suffer with a significant mental illness. Plaintiff visited the hospital after he claimed that he had taken 64 to 68 over the counter pain medications. He was sent back to the prison and a hospital nurse reported that there was absolutely nothing wrong with plaintiff on March 2, 2008.

Plaintiff's medical records continue to show that he made numerous complaints regarding GERD or heartburn related stomach pain, hemorrhoids, skin irritation and body odor. Plaintiff was treated after each of his complaints and on occasion even given requested antibiotics. Plaintiff was given medication for each of his objectively verified complaints. Plaintiff has not shown that his Eighth Amendment rights were violated. Defendants have shown considerable patience and tolerance for Plaintiff's medical complaints. Defendants have continued to treat

Plaintiff with medication and have provided frequent laboratory tests in an attempt to place Plaintiff at ease and rule out any serious illness. Defendants are entitled to qualified immunity.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendant's motions for summary judgment. Accordingly, Defendants motions for summary judgment (docket #43, #61, #70 and #83) will be granted and this case will be dismissed in its entirety.

A Judgment consistent with this Opinion will be entered.


Dated: 9/13/2010 /s/ R. Allan Edgar
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE